**Charles MUDD, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 4–1183A390.**

Court of Appeals of Indiana, Fourth District.

Oct. 10, 1985.

Gary K. Kemper, Jenner & Kemper, Madison, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

YOUNG, Presiding Judge.

Charles Mudd appeals his jury convictions of two Class C felonies under IND. CODE 35–48–4–10, dealing in marijuana by manufacturing, and possession of marijuana with intent to manufacture. Sentenced to concurrent five-year terms for these convictions, appellant contends that the two charges are duplicative, so that he may be convicted and sentenced for only one count of dealing in marijuana. He also challenges the sufficiency of the evidence and alleges ineffective assistance of counsel.

Because appellant's first contention is correct, we must reverse in part. We note *sua sponte* additional error in the conviction and sentencing of this defendant, requiring that we remand for further correction of the judgment.

In the spring of 1982, appellant and two other men approached Gary Huttsell, a Jefferson County farmer who owned three adjacent tracts of farmland known as "Hillbilly Heaven". Huttsell agreed to rent the property to the three men, who said they intended to plant corn or tobacco. A few days later, Mudd returned with a downpayment and signed a lease in the name of William Bright, explaining that Bright would be the principal lessee.

On June 20, Huttsell and his family decided to pick raspberries at Hillbilly Heaven. When they arrived, they discovered that their tenants had constructed a padlocked gate across the entrance. They also found William Bright living in a trailer on the property. Huttsell insisted upon a key to the gate and told Bright he would have to pay additional rent if he planned to live there.

Mudd came to Huttsell's home the following day and arranged to pay the farmer extra rent for the trailer. Later that day, the Huttsells again ventured to Hillbilly Heaven, this time to pick blackberries. As they approached, appellant walked through the fields to meet them. Mudd helped the Huttsells pick berries and agreed to provide them a key to the gate. Meanwhile, the Huttsells observed "unusual" plants growing in the fields among the rows of corn. Suspecting the plants were marijuana, they eventually informed state police after two unidentified men offered them large sums of money to remain silent.

■ These facts, appellant maintains, are insufficient to support his convictions

under IC 35–48–4–10 (amended 1982 Acts, P.L. 204), which provides in relevant part:

A person who:

(1) knowingly or intentionally manufactures or delivers marijuana, ... pure or adulterated; or

(2) possesses, with intent to manufacture or deliver, marijuana, ... pure or adulterated;

commits dealing in marijuana, ... a Class A misdemeanor. However, the offense is a Class D felony ... (ii) if the amount involved is more than thirty (30) grams of marijuana....

Our oft-recited standard of review for sufficiency of the evidence allows us neither to reweigh the evidence nor to assess the credibility of witnesses. Rather, we will reverse only where the unconflicting evidence leads to one conclusion and the trier of fact has reached the opposite conclusion. *Baxle v. State* (1985), Ind., 480 N.E.2d 561.

Appellant primarily argues the insufficiency of the evidence to establish his connection with the marijuana-growing operation. On the contrary, the facts here create a reasonable if not unavoidable inference that Mudd actively participated in the enterprise. Huttsell testified that Mudd signed the lease and paid rent for the farm property. When disagreement arose under the lease in late June, Mudd quickly appeared to offer Huttsell the increased rent he demanded. The same day, the Huttsells encountered Mudd walking through the rows of marijuana plants, which police photographs showed to be at least knee-high by early July, when Mudd was arrested. From this evidence, the jury could reasonably infer both appellant's continuous possessory interest in the growing site and his knowledge of the marijuana crop. While appellant correctly asserts that mere presence will not sustain a conviction for possession of drugs when the defendant lacks exclusive control of the premises, *Perry v. State* (1981), Ind.App., 418 N.E.2d 1214, here the evidence establishes the additional elements of intent and capability to maintain control and dominion over the contraband. *See Fyock v. State* (1982), Ind., 436 N.E.2d 1089. The jury's conclusion that Mudd constructively possessed the marijuana and engaged in its manufacture finds ample support in the record.

We must, however, agree with appellant's further contention that these facts do not support separate convictions for both offenses, manufacture and possession of marijuana. The trial court erred in entering judgment on both counts not simply because they arise from the same operative facts, but because the two offenses are not distinct for double jeopardy purposes. *See Elmore v. State* (1978), 269 Ind. 532, 382 N.E.2d 893.

Under the standard announced in *Blockburger v. United States* (1932), 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306, the focus of our double jeopardy inquiry is whether each offense requires proof of an additional element which the other does not. Consistent with this standard, our legislature has enacted IND.CODE 35–41–1–16 (formerly IC 35–41–1–2), which in part defines "included offense" as

... an offense that:

(1) is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged....

As our courts have previously decided under IC 35–48–4–10, possession of marijuana with intent to deliver represents an included offense of delivery of marijuana. *Cyrus v. State* (1978), 269 Ind. 461, 381 N.E.2d 472, *cert. denied*, 441 U.S. 935, 99 S.Ct. 2058, 60 L.Ed.2d 664 (1979); *Haynes v. State* (1980), Ind.App., 411 N.E.2d 659. Manufacturing marijuana likewise includes the offense of possession with intent to manufacture. The proof required to establish manufacture of marijuana necessarily establishes possession as well; one cannot knowingly or intentionally manufacture the drug without also possessing it to that end. Accordingly, we must reverse appellant's conviction for the lesser included offense of marijuana possession.

We are unpersuaded by the state's argument that appellant's cultivation of marijuana in the separate but adjoining fields which comprise Hillbilly Heaven will substantiate the two counts of which Mudd has been convicted. In the first place, the informations do not even allege distinct criminal acts but rather premise both charges on possession and manufacture of the same 45,000 plants. Nor, as a matter of law, will the facts here support multiple convictions under the delivery of marijuana statute. The cultivation of marijuana in contiguous fields constitutes one operative fact situation which no more gives rise to independent counts for each field than for each plant seized.

■ While appellant has not raised this issue, we additionally discern fundamental error in his conviction and sentencing under the version of IC 35–48–4–10 as amended in 1982. The amendment, creating an elevated Class C felony for dealing in marijuana in amounts greater than ten pounds, did not become effective until September 1, 1982. Mudd was arrested and the original informations filed against him on July 12, 1982, and thus he was properly charged with a Class D felony under the above-quoted version of the statute.

We remind the state, the trial court, and appellate counsel that the constitutional prohibitions against *ex post facto* criminal sanctions, U.S. Const. Art. 1, § 10; Ind. Const. Art. 1, § 24, require that criminal proceedings be governed by the statutory provision in effect at the time of the offense. The *ex post facto* doctrine forbids a court to increase retroactively the punishment for a crime committed under the old version of the code. *Garrett v. State* (1980), Ind.App., 411 N.E.2d 692. As our supreme court has observed, the offender selects the time of the crime and thus freezes the penal consequences as of that event. *Parsley v. State* (1980), 273 Ind. 46, 401 N.E.2d 1360, *cert. denied,* 449 U.S. 862, 101 S.Ct. 166, 66 L.Ed.2d 79.

Appellant's conviction of and sentencing for a Class C felony were, therefore, erroneous, and we accordingly remand for cor-rection of the judgment in this respect as well. The trial court having apparently found no aggravating circumstances in sentencing appellant to the presumptive term for a Class C felony, we instruct the trial court to enter the presumptive sentence for a Class D felony.

Finally, appellant alleges incompetence of his trial counsel. Excepting the minor oversight in allowing his client to be convicted and sentenced improperly as noted above, error which we are able to correct on appeal, we find no grounds for reversal.

We review allegations of ineffective assistance of counsel under the standards announced in *Strickland v. Washington* (1984) 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *see also Lawrence v. State* (1984), Ind., 464 N.E.2d 1291. The *Strickland* test entails two components: appellant must demonstrate both the deficiency of counsel's performance as measured by prevailing professional norms, and such prejudice from counsel's incompetence as would undermine the reliability and fairness of the proceeding. *Stanley v. State* (1985), Ind., 479 N.E.2d 1315. In assessing attorney performance, we entertain a strong presumption that counsel's conduct falls within the wide range of reasonably effective professional assistance. *Id.*

■ Appellant first contends that his counsel declined to call him as a witness although he desired to testify in support of his alibi defense and to deny having signed the lease for Huttsell's land. Trial counsel's sworn affidavit, however, states that Mudd followed his advice and decided not to testify. Given the risk of damage to Mudd's defense upon cross-examination and counsel's opinion that defendant's testimony would not have exculpated him, the failure to have defendant testify represents a reasonable strategic decision.

■ Mudd next argues that his attorney manifested incompetence in failing to object to the warrantless search of the Huttsell property. State police entered Hillbilly Heaven after obtaining Huttsell's permission to do so but without procuring a war-

rant for the search. While trial counsel might have elected to assail the legality of this search, such a strategy presented numerous pitfalls. Most obviously, for Mudd to assert a possessory interest in the premises sufficient to establish standing for Fourth Amendment purposes would undermine both his alibi defense and his position that he did not sign the lease. In addition, Huttsell's consent to the search creates a strong argument in favor of its legality. Appellant is correct in citing *Chapman v. United States* (1961), 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828, for the proposition that a landlord may not authorize a warrantless search in derogation of the tenant's Fourth Amendment rights. However, he ignores the distinguishing features of this case, including Huttsell's testimony that he retained a possessory interest in the nontillable portions of the rented land. In short, we cannot conclude that defense counsel unreasonably discarded this tack in light of its damaging implications and limited potential for success.

■ Appellant also premises his allegation of incompetence upon trial counsel's opening the door to prejudicial testimony after obtaining a motion in limine excluding such evidence. Eliciting this testimony regarding offers of money to the Huttsells after they discovered the marijuana patch perhaps constitutes an instance of poor trial tactics, but as nothing linked such offers to the defendant, we do not perceive sufficient prejudice to warrant reversal. Similarly, appellant's numerous citations to his counsel's failure to object to arguably inadmissible and prejudicial evidence, e.g., references to "marijuana" by lay witnesses and testimony estimating the number of marijuana plants seized, do not persuade us that defense counsel's omissions materially affected the fairness of the trial or its outcome.

We therefore affirm in part and reverse in part, remanding this cause to the trial court with instructions to vacate the conviction for possession of marijuana. We further instruct the court to correct the judgment to reflect a Class D felony conviction

for dealing in marijuana and to enter the presumptive two-year sentence for that offense.

MILLER and CONOVER, JJ., concur.